UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE TAJONAR,<br><br>                Plaintiff,<br>v.<br><br>ECHOSPHERE, L.L.C., et al.,<br><br>                Defendants. | CASE NO. 14cv2732-LAB (RBB)<br><br>**ORDER DENYING REMAND** |

Plaintiff Jose Tajonar filed a class action complaint on August 19, 2014, alleging various violations of California's labor codes, including: (1) failure to provide meal periods (Cal. Lab. Code § 226.7); (2) failure to timely pay final wages (Cal. Lab. Code § 203); and (3) failure to provide accurate and compliant wage statements (Cal. Lab. Code § 226).

Defendants, including DISH Network California Service Corporation (DISH), removed this action on November 11. Tajonar then filed a motion to remand.

**I.     Removal**

Under 28 U.S.C. § 1441(a), a case can be removed from state to federal court, provided it could originally have been brought in federal court. This statute is construed strictly against removal, and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992); *see also Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir.1988). The removing party bears the burden of establishing that the court has subject matter jurisdiction. *Abrego Abrego v. Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir. 2006).

**II. Discussion**

In removing this case, DISH relied on the Class Action Fairness Act (CAFA), under which the Court has jurisdiction over matters where, among other things, removal is timely and the amount in controversy exceeds $5 million. 28 U.S.C. § 1332(d)(2). Tajonar's Motion to Remand argues the Notice of Removal was: (1) untimely; and (2) failed to meet CAFA's minimum amount in controversy. The Court disagrees.

**A. Timeliness of Removal**

Removing parties must timely file their notice of removal. 28 U.S.C. § 1441. Under § 1446(b), a party generally has two thirty-day periods for removing a case. *See Kuxhausen v. BMW Fin. Serv. NA LLC*, 707 F.3d 1136, 1139 (9th Cir. 2013) (citing *Carvalho v. Equifax Info. Serv., LLC*, 629 F.3d 876, 885 (9th Cir. 2010)). If the case is removable on the face of the complaint, the first thirty-day period is triggered upon service of the summons and complaint. *Id.*; § 1446(b). A renewed thirty-day removal period commences when a defendant receives "an amended pleading, motion, order or other paper" from which removal can be first ascertained. § 1446(b).

The two thirty-day periods are nonexclusive, however. If the two periods are never triggered, a defendant may remove outside these periods "on the basis of its own information." *Roth v. CHA Hollywood Med. Ctr., LP*, 720 F.3d 1121, 1125 (9th Cir. 2013). Defendants have no duty of inquiry where removal is indeterminate based on the initial pleading or other paper. *Id.* at 1125. Pleadings or other paper are "indeterminate" if the jurisdictional elements are vague on the face of the complaint. *Kuxhausen*, 707 F.3d 1136 at 1139 (9th Cir. 2013).

DISH properly removed outside the two thirty-day periods. On its face, the SAC alleged the amount in controversy is "not anticipated to exceed $5,000,000."[1] (SAC, 3:3–4.)

---

[1] While DISH suggests a SAC was filed October 8, (Notice of Removal, 5:6), Tajonar claims the document was merely a proposed SAC accompanied by a letter to the LWDA. (Motion to Remand, 4:8). Either way, it makes no difference. If the SAC was filed, the date it was served starts the 30-day clock. *See, e.g., Jordan v. Nationstar*, 781 F.3d 1178, 1181 (9th Cir. 2015). But if not, the Court would construe the document SAC as "other paper." *See Addo v. Globe Life & Acc. Ins. Co.*, 230 F.3d 759, 761 (5th Cir. 2000) (holding that a post-complaint letter may be "other paper" under § 1446(b) since it gives defendant notice

1  Yet in its motion to remand, Tajonar contends this somehow reasonably notified DISH that
2  the amount in controversy exceeds $5 million. (Motion to Remand, 7:5–7, 25–27.) Tajonar's
3  jurisdictional allegation is facially vague in the SAC, and its inconsistent motion supports this.
4  DISH was left to guess whether the amount in controversy will ever exceed $5 million.

5  But since Tajonar failed to affirmatively allege CAFA's jurisdictional minimum, DISH
6  was excused from filing a notice of removal within the two thirty-day periods.  In light of
7  Tajonar's indeterminate complaint, DISH had no obligation to race against the removal clock
8  while engaging in a fact-finding scavenger hunt. *See Kuxhausen*, 707 F.3d at 1140
9  ("[D]efendants need not make extrapolations or engage in guesswork," but only "apply a
10 reasonable amount of intelligence in ascertaining removability"); *Roth*, 720 F.3d at 1126 (the
11 "defendants subjective knowledge cannot convert a non-removable action into a removable
12 one such that the thirty-day time limit of § 1446(b)(1) or (b)(3) begins to run against the
13 defendant") (internal quotation marks omitted).  The Ninth Circuit clearly articulated its
14 position against such a rule:

> A defendant should not be able to ignore pleadings or other documents from which removability may be ascertained and seek removal only when it becomes strategically advantageous for it to do so. But neither should a plaintiff be able to prevent or delay removal by failing to reveal information showing removability and then objecting to removal when the defendant has discovered that information on its own.

19 *Roth*, 720 F.3d at 1125.

20 Because DISH lacked notice of removability, it timely removed.

21 **B.    Amount in Controversy**

22 The complaint fails to affirmatively plead a particular amount in controversy or seek
23 specific damages.  In this case, DISH must establish by the preponderance of evidence that
24 the amount in controversy exceeds $5 million. *Ibarra v. Manheim Investments, Inc.*, 775 F.3d
25 1193, 1197 (9th Cir. 2015).  A defendant's notice of removal must include only a plausible
26 allegation that the amount in controversy exceeds CAFA's minimum. *Dart Cherokee Basin*

---

28 of the changed circumstances supporting federal jurisdiction).  Here, DISH received it and was on notice of it. (Motion to Remand, Ex. 2.)  The key is that this document however construed, first put DISH on notice that the case was removable.

*Operating Co., LLC v. Owens*, 135 S.Ct. 547, 554 (2014). Removal jurisdiction cannot be established by mere speculation and conjecture, with unreasonable assumptions; it must be based on facts. *See id.; Roth v. Comerica Bank*, 799 F. Supp. 2d 1107, 1118 (C.D. Cal. 2010).

This means that DISH is required to "set forth underlying facts to support key variables used in [its] calculations." *See Manier v. Medtech Prod., Inc.*, 2014 WL 1609655, at *2 (S.D. Cal. Apr. 22, 2014). In proving the amount in controversy, "[t]he parties may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Ibarra*, 775 F.3d at 1197. Estimates must be reasonable and fact-based, not speculative or inflated. *See Romsa v. Ikea US West, Inc.*, 2014 WL 4273265, at *2 (C.D. Cal. Aug. 28, 2014) (citing *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002)). *See also Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009) (finding by a preponderance of evidence that the amount in controversy was met, where calculations were "relatively conservative, made in good faith, and based on evidence whenever possible").

There is no dispute between the parties about these standards. Rather, the focus is on how they apply to the pleadings and facts. Tajonar challenges the sufficiency of evidence DISH produced to prove the amount in controversy.

**1.      Sufficiency of Evidence**

Tajonar's pleadings are peppered with arguments contesting DISH's evidence. DISH submits affidavits by its attorney of record and DISH's In-Home Services Human Resource Director, both of which are admissible. Tajonar claims DISH should have instead produced detailed reports, precise payroll documents, and other supporting information. (Reply to Motion to Remand, 13–19; Motion to Remand, 21–27.)

Tajonar misconstrues DISH's burden. A defendant "is not required to comb through its records to identify and calculate the exact frequency of violations"; rather it merely must prove the amount in controversy by a preponderance of the evidence. *Oda v. Gucci Am.*, 2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015). Affidavits and declarations serve as sufficient

evidentiary tools, and the Court will review them in analyzing whether DISH met its burden. *See Unutoa*, 2015 WL 898512, at *3 (C.D. Cal. Mar. 13, 2015) ("[A] removing defendant is not required to go so far as to prove Plaintiff's case for him by proving the actual rates of violation.") (citing *Oda*, at *5)).

### 2. Cal. Lab. Code § 226.7: Meal Period Violations

California Labor Code § 226.7(b) states that "[a]n employer shall not require an employee to work during a meal or rest or recovery period." Violating § 226.7(b) results in a penalty of "one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided." § 226.7(c). "Any action on any UCL cause of action is subject to the four-year period of limitations created by that section." *Cortez v. Purolator Air Filtration Prod. Co.*, 23 Cal. 4th 163, 178 (2000).

The SAC gives an estimate of over 100 putative class members, but says nothing else about the class size. (Compl., ¶ 77.) DISH contends that it employed 1,773 class members during the four-year limitations period, starting from September 23, 2010, through October 28, 2014. (Decl. of Wodell (Docket no. 1-8), ¶ 11.) Of that group, 1,552 employees worked as full time Field Service Technicians ("FSTs") (*Id.*) Each worked an average of 746 days during the four-year limitations period. (Decl. of Muraco (Docket no. 1-9), ¶ 5.)) Active and former employees were paid an average hourly wage of $20.99/hour. (*Id.*) In calculating the meal period premiums, DISH assumes that at any time during this four-year period, an FST missed at least one meal period. By multiplying 1,552 class members by $20.99, DISH's calculations put the estimated meal period premiums at $32,576.

DISH calculates a conservative estimate. It not only narrowed its calculations to include full-time FSTs alone, but relied on Tajonar's own allegations, which suggest that each of the 1,552 FSTs missed only one meal period during their entire employment.

Tajonar claims that "pursuant to company policy and/or practice and/or direction . . . Plaintiffs and other hourly employees were deprived of their mandatory meal periods." (SAC, ¶ 48.) FSTs install and service equipment in customer's homes, (Decl. of Wodell (Docket no. 1-8), ¶ 9.), and by doing so, were "*required* to miss their meal breaks in

order to drive to the next installation." (SAC, ¶ 51) (emphasis added).) Construed together, these allegations suggest DISH uniformly denied each FST a meal break. As Tajonar admits, missing meal periods was the "nature of work performed" because of "strict time constraints imposed by management." (*Id.* ¶ 50.)

Despite these broad allegations, DISH assumes that each FST missed only one meal period at some time during the four-year statutory period. That is, one meal break during the average of 746 days DISH employed each FST during the limitations period. This assumption is conservative, especially when compared to other district court decisions where similar allegations led courts to find even higher violation rates. *See, e.g.*, *Mejia*, 2015 WL 2452755, at *3–4 (C.D. Cal. May 21, 2015) (finding a 100% violation rate proper for allegations suggesting uniform violations); *Oda*, 2015 WL 93335, at *4 (finding a 50 percent violation rate for meal periods—2.5 meal period violations in a 5-day work week—reasonable, where plaintiff alleged defendant "consistently" violated policies and procedures). The evidence plausibly suggests that $32,576 in meal period premiums are at issue.

### 3. Cal Lab. Code § 203: Waiting Time Penalties

Under Cal. Labor Code § 203(a), "[i]f an employer willfully fails to pay . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefore is commenced; but the wages shall not continue for more than 30 days." This "so-called waiting time penalty is equivalent to the employee's daily wages for each day he or she remained unpaid up to a total of 30 days." *Drumm v. Morningstar, Inc.*, 695 F. Supp. 2d 1014, 1018 (N.D. Cal. 2010) (quoting *Mamika v. Barca*, 68 Cal. App. 4th 487, 493 (1998) (internal quotations omitted)).

During § 203's three-year statutory period, 712 full-time FSTs separated from DISH, either voluntarily or involuntary. (Decl. of Muraco (Docket no. 1-9), ¶ 7.) Each employee averaged an hourly rate of $19.46/hour. (*Id.*) DISH assumes that each employee is entitled to damages for a full thirty days, and reaches the amount in controversy by multiplying the

number of putative class members (712) by the final rate of pay ($19.46/hour) by the number of hours in thirty days (240), which equals $3,325,325. (*Id.*) Its calculations are reasonable and consistent with Tajonar's own allegations.

Like the meal period violations, DISH's calculations are fact-based. It was more likely than not that at least one violation went unpaid for well over thirty days during the three-year statutory period:

> [P]ursuant to company policy and/or practice and/or direction, Plaintiffs and others did not receive their final paychecks immediately upon involuntary termination or within 72 hours of voluntary separation, were not paid final wages at the location of employment, and said final paychecks did not include all wages to the employee . . . Upon termination, DEFENDANT EMPLOYER did not pay Plaintiff and Class Members and . . . all wages due and owing.

(Compl., ¶ 56).

DISH therefore properly estimated waiting time penalties to be $3,325,325. *See Roth v. Comerica Bank*, 799 F. Supp. 2d 1107, 1125 (finding even vaguer allegations, such as plaintiffs "regularly and/or consistently" worked overtime, suggested class members were denied some form of compensation); *Wilson v. Best Buy Co., Inc.*, 2011 WL 445848, at *2 (E.D. Cal. Feb. 8, 2011) (finding defendant provided plausible evidence to support all former employees were entitled to thirty days of penalties based on the allegation that plaintiff and class members didn't receive their wages within 72-hours of termination).

### 4.   Cal. Lab. Code § 226: Wage Statement Violations

Cal. Labor Code § 226(a) requires employers, in part, to provide each employee with "an accurate itemized statement in writing." Employers violating § 226(a) are penalized, and employees may receive "the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)." Cal. Lab. Code § 226(e)(1). A one-year statute of limitations applies. *See* Cal. Code Civ. Proc. § 340.

DISH states that it employed 1049 non-exempt California employees during the one-year statutory period, and, using actual dates of employment from that group, it produced

24,557 bi-weekly wage statements. (Decl. of Muraco (Docket no. 1-7, ¶ 8.)) Multiplying these figures, DISH estimates $2,403,350 in § 226 penalties. (*Id.*) The Court finds this estimate reasonable.

Tajonar once again suggests that DISH uniformly issued inaccurate pay stubs to non-exempt employees:

> [P]ursuant to company policy and/or practice and/or direction, DEFENDANT EMPLOYER issued Plaintiffs and Class Members pay stubs in violation of Labor Code § 226 because the pay stubs contained inaccurate information, such as the wrong gross and net wages earned, erroneous overtime rates of pay, wrong legal entity that is Plaintiff and the Class' real employer, among other errors.

(SAC, ¶ 57.) The Court finds reasonable the estimated $2,403,350 in wage statement violations. *See Molina v. Pacer Cartage, Inc.*, 47 F. Supp. 3d 1061 (S.D. Cal. Sept. 17, 2014) (finding defendant met amount in controversy after submitting evidence showing putative class member sought $4,000 maximum).

In sum, DISH's evidence plausibly supports its estimated amount in controversy of $5,761,25, which exceeds the jurisdictional minimum.

### III.   Conclusion

For these reasons, the Court can exercise jurisdiction over this matter. The motion to remand is **DENIED**.

**IT IS SO ORDERED**.

DATED: July 2, 2015

*[signature]*

**HONORABLE LARRY ALAN BURNS**
United States District Judge